OPINION OF THE COURT
John A. Milano, J.
What are the legal consequences when a landlord fails to attach a rent stabilization rider (Tenant’s Rights Lease Rider) to a renewal lease?
FACTS
The respondent is a rent stabilized tenant of apartment 1G at 40-15 Hampton Street, in Elmhurst, Queens County. His lease expired on December 31, 1980. A renewal notice was sent to the tenant and the tenant notified the landlord that he wanted a one-year lease at an increase from $292.95 to $325.18. The lease did not contain the Tenant’s Rights Lease Rider and the tenant accordingly refused to sign the lease, which was to commence on January 1,1981, absent the rider. The landlord then commenced a holdover proceeding with respect to the tenant’s refusal to return a signed lease agreement. The rent stabilization rider was subsequently offered by the landlord as of June 1, 1981. The tenant argues that the rent increase should not go into effect until June 1,1981, the date that the landlord offered the rider. Landlord argues that there should not be any penalty imposed by this court in that the tenant has not *743 been prejudiced in any way nor has he sustained any damages.
THE LAW
The Tenant’s Rights Lease Rider was approved pursuant to subdivision d of section YY51-6.0 of the Rent Stabilization Law (Administrative Code of City of New York, § YY51-6.0, subd d [RSL]). The rider with a notice dated May 6, 1980, and attested by Commissioner Anthony Gliedman of the Department of Housing Preservation and Development (DHPD), must be attached to all leases for rent stabilized apartments signed on or after May 5,1980. The text may not be modified or altered without the approval of the DHPD and the rider must be in a print size larger than the print size of the lease to which the rider is attached. (See Local Laws, 1979, No. 70 of City of New York.)
The rider generally informs tenants and owners about their basic rights and responsibilities under the Rent Stabilization Law, which protects tenants by regulating rents, services and evictions. It also provides property owners with rent increases and remedies so that owners may meet increased maintenance costs, obtain increases for new services and equipment and otherwise properly maintain the property. The rider does not contain every rule applicable to rent stabilized apartments. The appendix lists organizations which can provide assistance to tenants and owners who have inquiries, complaints or requests relating to subjects covered in this rider. The rider is only informational. Its provisions are not part of the lease. But it must be attached to the lease and if a landlord should fail to comply with these provisions (constituting a violation of the RSL and the Code of the Real Estate Industry Stabilization Association of New York City, Inc. [RS Code]) then such action can result in such discipline, fine or sanction as may be determined by the board of directors of the industry association (RSA) or the Conciliation and Appeals Board (CAB). (RS Code, § 8.)
The tenant has chosen to air his complaint before the Housing Court rather than complain to DHPD and eventual hearing before the RSA’s Code Compliance Committee *744 which could result in fines, suspension and expulsion of members who fail to comply with provisions of the law and code. This is an area in which there is little case law precedent reported as of yet. The administrative agencies having disciplinary jurisdiction in this matter are the RSA and CAB. The court does not have the power to levy sanctions or fines or to expel members of the RSA as defined by law nor does it have the power to increase or to decrease rents except as provided by law and in this regard the said administrative agencies have been given this authority by statute. (Administrative Code, §§ YY51-1.0, YY51-7.0, as added by Local Laws, 1969, No. 5 of City of New York; Emergency Tenant Protection Act, L 1974, ch 576, § 4.)
This court, therefore, could remand the matter to the RSA Code Compliance Committee for disciplinary action. However, because the rider in this particular case was offered to the tenant prior to this holdover proceeding coming before the court and since the tenant has not suffered special damages as a result thereof or been prejudiced in any way, the court is of the opinion that the landlord has seen the error of his ways and believes that his action has purged him of any harsh disciplinary sanctions.
However, the court at this time serves notice on all landlords in Queens County that any future violations of this law may result in severe penalties being administered by the appropriate administrative agencies having jurisdiction thereof.
Accordingly, the holdover petition is dismissed with prejudice. Tenant is directed to sign the renewal lease commencing January 1, 1981, which shall contain the tenant’s rider and notice, as provided by law and to pay all arrears in rqnt. The rent shall be $325.18 per month from January 1, '1981. However, because the landlord commenced this holdover proceeding after the tenant refused to sign the renewal lease, which refusal was unquestionably justified by the facts and the law, the court at this time fixes costs and legal fees in favor of the tenant in the sum of $125.